# EXHIBIT 8

# [INKIND CARDS, INC.]
## COMPREHENSIVE DIP TERM SHEET

**$25,000,000 Secured Superpriority Debtor-in-Possession ("DIP") Multi-Draw Term Loan Credit Facility October 23, 2026**

**This comprehensive term sheet (this "Term Sheet") summarizes the principal terms of a proposed senior secured superpriority debtor-in-possession financing, in an aggregate principal commitment of $25,000,000.** For efficiency and simplicity, the parties intend for this Term Sheet, once in agreed form between the DIP Lender and Loan Parties and approved by and incorporated into the DIP Orders, to serve as the operative DIP financing document (in lieu of a separate long-form DIP credit agreement), subject only to such supplemental security, guaranty, or ancillary documentation as may be required to grant, perfect, and evidence the DIP Liens. Bracketed items [●] remain to be confirmed. Capitalized terms not otherwise defined will have the meanings assigned in the DIP Documents.

This Term Sheet is solely for discussion purposes only and does not constitute a commitment or an offer that may be accepted. This Term Sheet is not intended, and will not be deemed, to create legally binding and enforceable obligations of any type or nature. This Term Sheet does not include all of the terms and conditions that may be contained in the documentation related to a potential transaction. The recipient of this Term Sheet may not rely on any oral or written statement to the contrary by any person. Any binding arrangement is subject to, among other things, satisfactory due diligence, internal approvals, and the negotiation, approval, execution and delivery of mutually acceptable documentation.

| TERM | DESCRIPTION |
|---|---|
| **Debtors / Borrowers** | FRC Balance LLC, an Arizona limited liability company doing business as True Food Kitchen, and True Food Kitchen Parent LLC, a Delaware limited liability company, as borrowers (collectively, the "Borrowers" or "Debtors"), together with each subsidiary that commences a Chapter 11 Case and is designated as a borrower in the DIP Documents. |
| **Guarantors** | True Food Kitchen Investco LLC and True Food Kitchen Holdings LLC, each a nondebtor entity, and each other nondebtor parent or subsidiary identified by an agreement of the Debtors and the DIP Lender before entry of the Interim DIP Order will jointly and severally, absolutely and unconditionally guarantee all DIP Obligations and grant liens on substantially all of their respective assets to secure such guaranties (collectively, the "Guarantors"; together with the Borrowers, the "Loan Parties"), subject only to exclusions expressly approved by the DIP Lender. |
| **DIP Lender** | inKind Cards, Inc. or one of its designees (the "DIP Lender"). |
| **Cases; Court** | Voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commenced on or about October 4, 2026 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court" |



WEIL\101678179\1\99980.0531

| TERM | DESCRIPTION |
|---|---|
| | and the "Chapter 11 Cases"). The Debtors will remain in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. |
| **Existing DIP Facility** | The Debtors are party to an existing senior secured, superpriority debtor-in-possession multi-draw term loan facility provided by HumanCo TFK IV, LLC (the "Existing DIP Lender") pursuant to the Comprehensive DIP Term Sheet dated October 2, 2026 and the interim order approving such facility entered on October 6, 2026 [Docket No. 58] (the "Existing DIP Interim Order" and such facility, the "Existing DIP Facility", the obligations thereunder, the "Existing DIP Obligations" and the liens securing the Existing DIP Obligations, the "Existing DIP Liens"), pursuant to which $5,000,000 was advanced to the Borrowers upon entry of the Existing DIP Interim Order.<br><br>A portion of the DIP Facility (as defined below) shall be used, upon entry of the interim order approving the DIP Facility (the "Interim Order"), to refinance the Existing DIP Facility in full, which shall thereupon be cancelled and terminated in full. |
| **DIP Facility** | A senior secured, superpriority, multiple-draw debtor-in-possession term loan facility in an aggregate principal commitment of $25,000,000 (the "DIP Facility" and the aggregate commitment thereunder, the "Aggregate DIP Commitment" and the loans thereunder, the "DIP Loans"). The DIP Facility is drawable only as described under "Advances — DIP Orders" below and is subject to the Approved Budget, applicable conditions precedent, and the DIP Orders. Capitalized Interest and fees constitute additional DIP Obligations but do not reduce the Aggregate DIP Commitment. Each cash advance permanently reduces undrawn availability; prepaid amounts may not be reborrowed. No borrowing may exceed the amount then authorized by the applicable DIP Order. |
| **Commitment** | Upon entry of the Interim Order, the DIP Lender's commitment to provide the DIP Facility shall become binding as provided under "Nature; Status." Funding of advances shall not require any further lender or investor commitment approval, but shall remain subject to the applicable funding conditions expressly set forth herein. |
| **Advances** | Upon entry of (i) the Interim Order, up to $12,000,000 of the DIP Facility shall be available to be drawn and (ii) upon entry of a final order approving the DIP Facility (the "Final Order" and together with the Interim Order, the "DIP Orders"), the remaining commitments under the DIP Facility (the "Escrowed Commitments") shall be funded by the DIP Lender into the DIP Escrow Account (as defined below) and shall be available to be drawn, subject to the conditions described under "Conditions Precedent to Advances" below.<br><br>Within two (2) Business Days after entry of the Final Order, the DIP Lender shall deposit an amount equal to the Escrowed Commitments |



WEIL:\101678179\1\99980.0531

| TERM | DESCRIPTION |
|---|---|
| | into a segregated escrow account (the "DIP Escrow Account") maintained with an escrow agent, and pursuant to an escrow agreement, reasonably acceptable to the Debtors and the DIP Lender. Funds in the DIP Escrow Account shall be released to the Borrowers upon delivery of a borrowing request and satisfaction (or waiver by the DIP Lender) of the conditions set forth under "Conditions Precedent to Advances" below, and each such release shall constitute an advance of DIP Loans for all purposes hereunder. Amounts held in the DIP Escrow Account shall not constitute DIP Loans or accrue interest until released to the Borrowers. Except to the extent applied to a cash bid as described under "Credit Bidding" below, upon the Maturity Date or termination of the commitments under the DIP Facility, any unreleased funds in the DIP Escrow Account shall be returned to the DIP Lender.<br><br>As a condition to each advance, the required testing of the Approved Budget shall have been completed not less than three (3) days before the proposed funding date. |
| **Conditions Precedent to Effectiveness** | Conditions to the effectiveness of the DIP Lender's commitment and to the initial advance: (a) entry of the Interim Order, including the good-faith finding under section 364(e); (b) the initial Approved Budget; (c) satisfactory confirmatory due diligence; (d) no Default or Event of Default; (g) representations and warranties true and correct in all material respects; (h) termination of the Existing DIP Facility (and repayment in full of all obligations thereunder) and the Existing DIP Liens and (i) receipt of customary deliverables including, without limitation, KYC. |
| **Conditions Precedent to Advances** | Advances under the DIP Facility shall be subject only to: (i) the entry of the Final Order (and which shall not have been stayed, vacated, reversed, terminated or amended), (ii) no motion, pleading or application seeking relief affecting the provision of the DIP Facility, (iii) no Default or Event of Default, (iv) each of the representations and warranties shall be true and correct in all material respects, (v) use of the proceeds of such advance in accordance with the Approved Budget, (vi) satisfaction of the Minimum Liquidity condition described under "Minimum Liquidity" below and (vii) receipt of a borrowing request. |
| **Use of Proceeds** | DIP Loan proceeds may be used (a) to refinance the Existing DIP Facility in full in an aggregate amount of $[6,900,000][1] (including accrued interest and fees payable in connection therewith in accordance with the terms set forth in the Existing DIP Interim Order, without any amendment thereto prior to the date of the (which shall occur upon the first advance of a DIP Loan upon entry of the Interim DIP Order) and (b) otherwise, solely in accordance with the Approved |

[1] [NTD: Payoff figure remains subject to ongoing review and diligence.]



WEIL\101678179\1\99980.0531

| TERM | DESCRIPTION |
|---|---|
| | Budget for: (i) working capital and other general corporate purposes; (ii) costs and expenses of administering the Chapter 11 Cases, including allowed professional fees and U.S. Trustee fees; (iii) transaction costs, fees, and expenses relating to the DIP Facility; (iv) payment of adequate protection obligations (if any) as approved by the Bankruptcy Court; and (v) such other purposes as the DIP Lender may approve in writing and the Bankruptcy Court may authorize. Except for the investigation allowance and rights expressly reserved under "Investigation Budget; Challenge Rights." no proceeds of the DIP Facility, DIP Collateral, cash collateral, Carve-Out, or other property of the Debtors' estates may be used to investigate, assert, join, commence, prosecute, support, or finance any claim, objection, action, or challenge against the DIP Lender or relating to the DIP Facility, DIP Obligations, DIP Liens, superpriority claims, fees, or credit-bid rights. Nothing herein prohibits a timely objection to proposed DIP relief, enforcement of the DIP Lender's funding obligations, or seeking the relief expressly reserved under "Remedies." |
| **DIP Documents** | The DIP Facility may be documented and funded pursuant to this Term Sheet, duly executed by the applicable parties, the Interim DIP Order and the Final Order as applicable, together with any separate instruments necessary to establish or perfect guarantees or security interests not established or perfected pursuant to the applicable DIP Order, including those of the nondebtor Guarantors (collectively, the "DIP Documents"). Execution of a separate credit agreement, promissory note, or other definitive financing agreement shall not be a condition to initial or subsequent funding if the applicable terms and protections are set forth in this Term Sheet and the applicable DIP Order. The parties may subsequently execute additional documentation consistent with those terms, but shall not impose additional funding conditions or delay an otherwise permitted borrowing without the Debtors' written consent and any required court approval. The applicable DIP Order controls in the event of conflict. The DIP Documents shall specify all funding conditions, fees, lien and claim priorities, Carve-Out, covenants, defaults and remedies before the applicable funding; no unspecified "customary" term shall constitute an additional funding condition. For the avoidance of doubt, the DIP Orders shall be in a form and substance acceptable to the Debtors and the DIP Lender in their respective sole discretion. |
| **Interest** | DIP Loans will bear interest at 5.00% per annum, computed on the basis of a 360-day year and actual days elapsed. Interest will accrue on funded principal and will be payable monthly in arrears in kind ("PIK"). PIK interest will be capitalized monthly and on the Maturity Date.<br><br>Capitalized interest will thereafter constitute principal and bear interest |

| TERM | DESCRIPTION |
|---|---|
| | to the extent permitted by applicable law. |
| **Exit Fee** | On the Maturity Date or earlier of repayment, prepayment, refinancing, or the closing of a sale transaction or the effective date of a chapter 11 plan that includes a recapitalization (either of which may include a credit bid), the Borrowers will pay an exit fee (the "Exit Fee") equal to 2% of the DIP Loans borrowed as of such date. |
| **Default Rate** | Upon the occurrence and during the continuance of an Event of Default, all DIP Obligations will bear interest at the otherwise applicable rate plus 2.00% per annum (the "Default Rate"), payable in kind or cash at the DIP Lender's election, without limiting any other rights or remedies. |
| **Maturity Date** | The earliest to occur of: (i) April 30, 2027; (ii) the closing of a sale transaction for all or substantially all of the Debtors' assets or equity; (iii) the effective date of any chapter 11 plan with respect to any Debtor; (iv) conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (v) dismissal of any Chapter 11 Case; and (vi) acceleration of the DIP Obligations following an Event of Default (the "Maturity Date"). All outstanding DIP Obligations will be due and payable in full on the Maturity Date, except to the extent validly credit bid or applied to a cash bid as described under "Credit Bidding" below. |
| **Voluntary Prepayments** | The Borrowers may prepay the DIP Loans in whole or in part upon at least three (3) Business Days' prior written notice, without premium or penalty other than the accrued Interest, earned fees (including the Exit Fee), reimbursable expenses, and other DIP Obligations then due. Prepaid amounts may not be reborrowed. Subject to the DIP Orders and the Carve-Out, partial prepayments shall be applied *first* to reasonable, documented expenses then due within the agreed cap; *second* to earned fees then payable; *third*, to accrued Interest not already capitalized; *fourth* to principal, including capitalized Interest and fees; and *last* to other DIP Obligations then due, without duplicate recovery. |
| **Mandatory Prepayments** | Subject to the Approved Budget, the Carve-Out, and the DIP Orders, unless waived in writing by the DIP Lender, the DIP Loans will be prepaid from 100% of the net cash proceeds of: (i) asset sales or dispositions of core assets outside the ordinary course, including any section 363 sale and any lease assignment or other lease disposition; (ii) casualty, insurance or condemnation recoveries not reinvested within an agreed period; and (iii) debt or equity issuances not permitted by the DIP Documents, in each case excluding proceeds expressly permitted to be retained under the Approved Budget. Sale proceeds shall be applied at closing, refinancing proceeds within two (2) Business Days after receipt, and other covered proceeds promptly |



WEIL\101678179\1\99980.0531

| TERM | DESCRIPTION |
| --- | --- |
| | upon receipt, subject to the express budget exceptions. These requirements do not postpone payment at an earlier Maturity Date. Application is subject to permitted senior priorities and excludes non-estate PACA/PASA trust assets and property expressly excluded from recourse under "Collateral." Payments shall follow the waterfall under "Voluntary Prepayments." Any remaining DIP Obligations are due on the Maturity Date. |
| **Priority; DIP Liens** | All principal, capitalized Interest, fees, expenses, indemnities, protective advances, and other amounts owing under the DIP Documents (collectively, the "DIP Obligations") will constitute allowed senior superpriority administrative expense claims under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expenses and unsecured claims now existing or arising hereafter under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113, or 1114 of the Bankruptcy Code, subject to the Carve-Out, and the exclusions and reservations expressly set forth herein and in the DIP Orders.<br><br>The DIP Obligations will be secured by valid, binding, continuing, enforceable, fully perfected liens on and security interests in all property of the Loan Parties, whether now owned or hereafter acquired, and all proceeds thereof (the "DIP Collateral"), including: (i) first-priority liens under section 364(c)(2) on unencumbered property; (ii) junior liens under section 364(c)(3) on property subject to valid, perfected, nonavoidable liens; and (iii) senior priming liens under section 364(d)(1) on property subject to existing liens, in each case subject to the Carve-Out, the DIP Collateral Exclusions, and any permitted prior liens expressly set forth in the applicable DIP Order. Nondebtor Guarantor liens and their priority shall be established under applicable nonbankruptcy law, not by section 364. |
| **Collateral** | DIP Collateral will include, without limitation, all cash, deposit and securities accounts, accounts receivable, payment intangibles, inventory, equipment, fixtures, real and personal property, leasehold interests (to the extent lienable), intellectual property, books and records, commercial tort claims, insurance proceeds, investment property, equity interests in subsidiaries, and all products and proceeds of the foregoing. The DIP Orders will provide that liens on estate property are perfected without further action, to the extent authorized by applicable law; the Loan Parties will execute necessary further assurances consistent with the DIP Documents. Separate instruments and perfection steps remain required for the nondebtor Guarantors as provided herein.<br><br>Notwithstanding the foregoing, DIP Collateral excludes, and no DIP Lien or DIP superpriority claim shall attach to or be payable from (the "DIP Collateral Exclusions"): (i) causes of action under chapter 5 of the Bankruptcy Code or applicable state-law equivalents and their |

| TERM | DESCRIPTION |
| --- | --- |
| | proceeds; (ii) fiduciary-duty or similar claims against current or former directors, officers or managers and their proceeds; (iii) accounts held by an escrow agent in the Chapter 11 Cases, including the Professional Fee Reserve, adequate-assurance escrows and buyer-deposit escrows, until funds are released to a Debtor; and (iv) PACA/PASA trust assets to the extent not property of the estates. Released escrow funds become DIP Collateral only to the extent otherwise included and not required for the Carve-Out or another exclusion. |
| **Receivables and Merchant Financing Protections** | **Receivables; Payment Streams.** Without limiting the generality of the DIP Collateral definition, DIP Collateral shall expressly include all post-petition accounts, accounts receivable, payment intangibles, credit card receivables, delivery-platform receivables, loyalty-program receivables, gift-card receivables, contract rights, payment rights, proceeds and collections arising from the operation of the Debtors' restaurants after the Petition Date.<br><br>**Processor and Platform Remittances.** Upon entry of the Interim Order, all payment processors, delivery platforms, rewards-program providers, and similar parties shall remit all post-petition proceeds constituting property of the Debtors' estates or DIP Collateral in accordance with the Debtors' court-approved cash-management system and shall not implement or continue any prepetition remittance, lockbox, reserve, sweep, or control instruction with respect to such proceeds except as authorized by the DIP Orders or further order of the Bankruptcy Court.<br><br>**Released Reserves.** All processor reserves, holdbacks, restricted cash, letters-of-credit collateral, merchant reserves and similar amounts released or recovered after the Petition Date shall constitute DIP Collateral to the extent released to a Loan Party and otherwise included under "Collateral," subject to the Carve-Out and express DIP Collateral Exclusions.<br><br>**Perfection.** The DIP Liens shall automatically attach to all post-petition proceeds, collections and recoveries derived from or relating to the foregoing property without further action to the extent authorized by the applicable DIP Order, subject to the DIP Collateral Exclusions and the separate perfection requirements for nondebtor Guarantors. |
| **Cash Collateral; Cash Management** | The Debtors may use cash collateral only in accordance with the Approved Budget and the DIP Orders. All operating and deposit accounts will be maintained within a cash-management system acceptable to the DIP Lender. The DIP Lender may require account control agreements and customary dominion arrangements only to the extent necessary under the "DIP Documents," provided that no cash dominion will be exercised before an Event of Default and expiration |



WEIL\101678179\1\99980.0531

| TERM | DESCRIPTION |
|---|---|
| | of any applicable Remedies Notice Period. |
| **Carve-Out** | The DIP Liens, superpriority claims, and remedies will be subject to a "Carve-Out" for: (i) statutory fees payable to the U.S. Trustee and the Clerk of the Bankruptcy Court, plus applicable statutory interest, without regard to delivery of a Carve-Out Trigger Notice; (ii) reasonable fees and expenses of a chapter 7 trustee under section 726(b), up to $50,000, without regard to delivery of a Carve-Out Trigger Notice; (iii) allowed unpaid fees and expenses of professionals retained by the Debtors and any statutory committee, in strict adherence to any such amounts contained within the Approved Budget, incurred through the second Business Day after delivery of a Carve-Out Trigger Notice; and (iv) allowed unpaid fees and expenses of such professionals incurred thereafter, subject to an aggregate post-trigger cap of $650,000. Allowance may occur after the applicable incurrence period. The caps and reserve mechanics shall be agreed and included in the Interim Order. The Carve-Out survives termination of commitments and enforcement of remedies, subject to the express use restrictions and reservations under "Investigation Budget; Challenge Rights."<br><br>"Carve-Out Trigger Notice" means written notice from the DIP Lender to the Debtors' lead counsel, the U.S. Trustee, counsel to any statutory committee and counsel to the Prepetition Secured Parties, delivered following the occurrence and during the continuance of an Event of Default and stating that the DIP Lender is invoking the Carve-Out provisions of the DIP Orders.<br><br>At initial funding and weekly thereafter until a Carve-Out Trigger Notice, the Debtors shall transfer the budgeted weekly professional fees and expenses into a segregated escrow account (the "Professional Fee Reserve"), with notice to the DIP Lender. Deposits are deemed used when made and may be disbursed only in accordance with applicable court orders. After payment or reservation for allowed covered fees, any remaining balance released to a Debtor becomes DIP Collateral. The reserve is not a cap on the Carve-Out and does not increase the Aggregate DIP Commitment. |
| **Investigation Budget; Challenge Rights** | The DIP Orders shall provide any statutory committee 90 days after its formation, and any other party in interest with requisite standing 75 days after entry of the Interim Order, to investigate and commence a challenge to prepetition liens, claims, transfers and causes of action (the "Challenge Period"). A timely challenge shall remain preserved until finally resolved. The Challenge Period may be extended by written agreement of the DIP Lender or order of the Bankruptcy Court. Entry of the Final DIP Order shall not itself shorten any unexpired challenge period under the Existing DIP Orders or resolve any timely pending challenge. |

| TERM | DESCRIPTION |
|---|---|
| | The Approved Budget shall include up to $250,000 for reasonable committee professional fees and expenses of investigating and prosecuting timely challenges, in addition to and not reducing the Carve-Out but within the aggregate DIP commitment. Use of DIP proceeds or DIP Collateral to prosecute a challenge beyond such investigation allowance requires further agreement or court authorization. Expiration of a Challenge Period without a timely challenge binds the affected parties only to the extent provided in the DIP Orders. Nothing herein limits a timely objection to proposed DIP relief, enforcement of the DIP Documents or funding obligations, claims arising from future conduct, or requests for relief expressly reserved under "Remedies." |
| **Adequate Protection** | Holders of any prepetition secured claims, liens, security interests, mortgages, pledges, assignments, control rights, or other interests in property of the Debtors that are affected by, subordinated to, primed by, or otherwise subject to the DIP Facility or the DIP Orders (the "Prepetition Secured Parties") will receive adequate protection solely to the extent of any diminution in value of their interests in prepetition collateral, in the form approved by the Bankruptcy Court, which may include replacement liens, section 507(b) superpriority claims, payment of reasonable professional fees, financial reporting, and other customary protections. Adequate-protection liens and claims granted under the DIP Orders will be junior to the DIP Liens, DIP superpriority claims, and the Carve-Out. Nothing herein determines the validity, priority, amount, or enforceability of prepetition claims or liens. |
| **Approved Budget; Variances** | Before the initial funding, the DIP Lender will approve a 13-week cash-flow budget covering receipts, disbursements, professional fees, and financing needs reasonably consistent with the Debtors' past practices (as updated with the DIP Lender's written consent, the "Approved Budget"). The Approved Budget will be tested bi-weekly on a rolling cumulative basis over a rolling four-week testing period, though testing may occur more frequently or on a different schedule depending on the timing of a funding request. The initial testing date, testing period, treatment of reserve deposits, professional fees and Protected Line Items, and permitted carryforwards shall be specified in the Final Order. Unless otherwise expressly agreed, actual aggregate disbursements may not exceed budgeted disbursements by more than 20% and receipts may not be less than 80% of budgeted receipts. Professional fees are excluded from variance testing. Favorable variances may be carried forward only as agreed. Delivery of a proposed revised budget shall not modify the Approved Budget, and no revised budget shall become effective unless approved in writing by the DIP Lender (not to be unreasonably withheld). |

| TERM | DESCRIPTION |
|---|---|
| **Reporting** | Debtors shall provide the DIP Lender:<br>• Cash reports every two (2) weeks delivered within three (3) Business Days after every other week-end, showing beginning and ending cash, receipts, disbursements, and liquidity.<br>• A rolling 13-week cash-flow forecast, updated at least every four weeks, together with a proposed revised budget for DIP Lender approval.<br>• Weekly budget-to-actual variance reports, with line-item and cumulative analyses and management explanations for material variances.<br>• Monthly unaudited financial statements within thirty (30) days after month-end; annual financial statements when available; and prompt delivery of reports provided to any statutory committee or material creditor group, subject to privilege and confidentiality restrictions.<br>• Prompt notice of any Event of Default, material litigation, governmental investigation, casualty, material adverse development, landlord or licensing action, or challenge to the Prepetition Secured Parties.<br>• Reasonable access, on notice, to management, advisors, books, records, properties, and financial information, subject to customary privilege protections, and, to the extent the DIP Lender is a bidder in the sale process, any restrictions on access to information by bidders set forth in the approved bidding procedures order or any order of the Bankruptcy Court. |
| **Affirmative Covenants** | Debtors shall:<br>• Comply with the Approved Budget, DIP Orders, sale and plan milestones, and all material requirements of the DIP Documents.<br>• Preserve the Loan Parties' existence, material rights, permits, franchises, and insurance; maintain properties; pay post-petition taxes and administrative expenses when due, subject to permitted contests.<br>• Operate the business in the ordinary course consistent with the Approved Budget and applicable law; maintain cash-management arrangements; and use commercially reasonable efforts to pursue the approved sale and/or plan process.<br>• Obtain and maintain first priority perfection of the DIP Liens, execute further assurances, and cooperate with collateral audits and appraisals reasonably requested by the DIP Lender.<br>• Comply with all obligations to the DIP Lender and promptly seek Bankruptcy Court approval of any action required to implement the DIP Facility. |

| TERM | DESCRIPTION |
|---|---|
| **Negative Covenants** | The Debtors shall not permit:<br>• additional indebtedness, new merchant cash advance or similar fast alternative financing, liens, superpriority claims, guarantees, investments, restricted payments, asset sales, affiliate transactions, or amendments to material agreements, except as expressly permitted by the DIP Documents, the Approved Budget, or the DIP Orders.<br>• any change in the nature of the business, fiscal year, organizational structure, or cash-management system, and no formation or acquisition of subsidiaries, without the DIP Lender's prior written consent.<br>• payment on prepetition claims except as authorized by the Bankruptcy Court, provided in the Approved Budget, and approved in the DIP Documents.<br>• any motion, order, plan, or transaction that would prime, surcharge, subordinate, impair, or alter the DIP Liens, DIP superpriority claims, DIP Obligations, remedies, or credit-bid rights without the DIP Lender's written consent.<br>• any use of DIP Collateral or cash collateral other than in accordance with the Approved Budget and DIP Orders.<br>• any bidding procedures, bid protections, stalking-horse agreement (with the DIP Lender's right and ability to be designated as the stalking horse bidder fully preserved), asset purchase agreement, sale order, plan, disclosure statement, or other Transaction document to discriminate against the DIP Lender, impair or condition its ability to submit a bid or credit bid, require a cash deposit with respect to the credit-bid portion of its bid, restrict assignment of its bid to an acquisition vehicle or designee, or impose conditions on the DIP Lender that are not imposed on similarly situated bidders, in each case without the DIP Lender's prior written consent subject to the Bankruptcy Court's authority under section 363(k), the approved bidding procedures, and any bidder-information protocol. This provision does not dispense with a deposit or other qualification applicable to a cash-funded portion of a bid. |
| **Case Milestones** | • November 2, 2026: entry of Interim Order.<br>• November 20, 2026: entry of Bidding Procedures Order.<br>• November 23, 2026: entry of Final Order<br>• December 22, 2026: sale order entered.<br>• January 22, 2027: sale closing.<br>• April 30, 2027: plan effective date or DIP repayment in full. |

| TERM | DESCRIPTION |
|---|---|
| | Failure to satisfy any Case Milestone by the applicable date, as extended pursuant to this paragraph, shall constitute an Event of Default. The deadline for any Case Milestone requiring a hearing or entry of an order by the Bankruptcy Court shall be automatically extended on a day-for-day basis to the extent satisfaction is delayed solely by reason of the Bankruptcy Court's calendar or scheduling, provided that the Debtors have timely sought the applicable hearing or relief and are diligently prosecuting the matter. Any other extension shall require the DIP Lender's written consent, which may be granted in its sole discretion. A Case Milestone requiring entry of an order, including the Sale Order, shall be satisfied upon entry of that order, without requiring that it become final and nonappealable, unless the applicable Case Milestone expressly provides otherwise. Satisfaction of a Case Milestone shall not waive any separate funding condition requiring entry or continued effectiveness of the Final DIP Order or the Sale Order. |
| **DIP Order Protections** | Subject to the Carve-Out, DIP Collateral Exclusions, and remedies and protections expressly provided herein, the Final Order shall, to the fullest extent permitted by law:<br>• waive section 506(c) of the Bankruptcy Code;<br>• waive the "equities of the case" exception under section 552(b);<br>• prohibit surcharge of DIP Collateral;<br>• preserve the DIP Lender's credit-bid rights;<br>• authorize automatic perfection of DIP Liens; and<br>• bind all successors, trustees, examiners and estates.<br>Provided, however, that any such waivers shall become effective only upon entry of the Final Order.<br>The Interim Order shall approve this Term Sheet as the operative financing agreement, establish the binding full Aggregate DIP Commitments and specify the interim borrowing authority and agreed protections. The Final Order shall authorize the remaining Aggregate DIP Commitments, authorize borrowing of the full commitment without any renewed commitment approval, and specify the agreed protections. Additional documents shall not change agreed economics or funding conditions except by an amendment under "Amendments; Waivers."<br>The DIP Orders shall contain customary consent rights over the Debtors' court filings and, subject to challenge, customary stipulations regarding the validity, extent, priority, and perfection of inKind's prepetition secured debt. |
| **Funding Requests:** | **Borrowing Requests.** Borrowings shall be requested by delivery of a funding notice at least three (3) Business Days prior to the proposed |

| TERM | DESCRIPTION |
| --- | --- |
| | funding date. The initial funding following entry of the Interim Order shall instead occur under the agreed initial funds flow upon satisfaction or waiver of its conditions. The DIP Lender shall fund a properly requested borrowing when the applicable express conditions are satisfied or waived. "Business Day" means a day other than Saturday, Sunday or a day on which commercial banks in New York City are authorized or required to close.<br><br>Borrowings may be requested no more frequently than once per calendar week and shall be in a minimum amount of $500,000 and integral multiples of $100,000 in excess thereof, unless otherwise approved by the DIP Lender or a smaller amount is the remaining available commitment. Each borrowing shall be funded solely into an account identified in the applicable funds-flow memorandum or directly to approved recipients pursuant to the "Direct Funding Rights" provision. No borrowing shall be requested or made solely to prefund expenditures scheduled beyond the period covered by the applicable four-week liquidity forecast, Professional Fee Reserve deposits, a wind-down reserve in an amount to be agreed by the Debtors and DIP Lender, or other court-approved reserves. |
| **Minimum Liquidity:** | As a condition to each borrowing, after giving effect to the requested borrowing and the application of proceeds thereof, projected unrestricted cash shall not fall below $1,000,000 at any time during the succeeding four-week period, based on the Approved Budget and the projections delivered with the applicable funding notice, unless otherwise approved by the DIP Lender in writing. The forecast period shall end at an earlier anticipated sale closing or other repayment in full, and this test shall be applied consistently with "Maximum Cash Balance." |
| **Maximum Cash Balance:** | No borrowing shall be made if, after giving effect thereto, unrestricted cash would exceed the amount reasonably necessary to fund operations through the next scheduled borrowing date as reflected in the Approved Budget, together with the cash needed to satisfy "Minimum Liquidity", Professional Fee Reserve deposits and other court-approved reserves. This limitation shall not itself prevent a draw necessary to satisfy the minimum-liquidity condition. |
| **Direct Funding Rights:** | At the election of the DIP Lender, any borrowing may be funded directly to designated vendors, landlords, professionals or other approved recipients in accordance with the Approved Budget and approved funds-flow memorandum, after notice to the Debtors sufficient to avoid duplicate payments and preserve the court-approved cash-management system. No direct payment may bypass the Carve-Out, agreed priorities or required court approval. |
| **Representations and Warranties** | Each Loan Party represents and warrants, on execution and each borrowing, that (i) it is duly organized and has authority to execute and |

| TERM | DESCRIPTION |
|---|---|
| | perform the DIP Documents; (ii) the DIP Documents have been duly authorized and are binding subject to applicable court approval and applicable law; (iii) their execution and performance do not conflict in any material respect with its organizational documents, applicable law or binding agreements, subject to the DIP Orders; (iv) financial statements and other information supplied are accurate in all material respects; (v) projections are prepared in good faith on reasonable assumptions and are not a guarantee of results; and (vi) material liabilities, liens, litigation and contractual obligations have been disclosed.<br><br>Each Loan Party further represents that, except as disclosed to the DIP Lender before entry of the Interim Order or subsequently accepted in writing, it has the rights in property necessary to grant the agreed DIP Liens, complies in all material respects with applicable tax, employee-benefit, environmental, labor, sanctions, anti-corruption and anti-money-laundering laws, and maintains required material insurance and intellectual-property rights. No representation of balance-sheet solvency is made by a Debtor. Validity, priority and perfection of DIP Liens are subject to the applicable DIP Orders and the separate instruments required for nondebtor Guarantors. |
| **Events of Default** | The following shall constitute an “Event of Default.” A “Default” means an event that would become an Event of Default following notice or expiration of an expressly applicable cure period:<br><br>• Failure to pay principal when due, or failure to pay fees, expenses or other DIP Obligations when due continuing for three (3) Business Days after written notice, in each case subject to the agreed capitalization provisions.<br><br>• Breach of an Approved Budget variance covenant or Case Milestone, unless waived or extended, or a materially inaccurate representation or warranty or material breach of another covenant or DIP Document that, if capable of cure, continues for five (5) Business Days after written notice.<br><br>• Any DIP Order is stayed, reversed, vacated, modified, or amended without the DIP Lender’s consent; any Loan Party fails to comply with a DIP Order; or the DIP Liens or superpriority claims cease to be valid, perfected, enforceable, or of the required priority.<br><br>• Dismissal, conversion, or appointment of a trustee or examiner with expanded powers; termination of exclusivity in a manner materially adverse to the DIP Lender; or entry of an order granting relief from stay with respect to material DIP Collateral.<br><br>• Filing, support, or confirmation of a plan, sale, financing, or other transaction that fails to provide for payment in full in cash of the DIP Obligations on its effective date or closing, except to the extent the DIP Lender elects to credit bid or otherwise agrees. |

| TERM | DESCRIPTION |
|---|---|
| | • Any support for a challenge to the credit-bid rights by a Loan Party, or any payment from DIP Collateral to fund such challenge other than an investigation, objection, challenge or request for relief expressly permitted under this Term Sheet or the applicable DIP Order. Seeking to enforce the DIP Lender's funding obligations shall not alone constitute a Default or Event of Default.<br>• Entry of a final judgment or occurrence of a casualty, regulatory action, or other event having a material adverse effect; invalidity of a material DIP Document; or default under a material post-petition obligation, after any applicable grace period, reasonably expected to materially impair repayment or collateral value, excluding a good-faith dispute being contested as permitted by the DIP Documents.<br>• Failure to satisfy any Case Milestone by the applicable date, unless extended in writing by the DIP Lender. |
| **Remedies** | Upon and during the continuance of an Event of Default, the DIP Lender may, subject to the DIP Orders:<br>1. suspend further advances while an Event of Default is continuing and terminate undrawn commitments subject to the notice-and-hearing protections below;<br>2. declare all DIP Obligations due and payable, subject to the notice-and-hearing protections below;<br>3. impose the Default Rate;<br>4. terminate, suspend, or restrict the Debtors' authority to use cash collateral;<br>5. sweep, set off, or apply balances in any account constituting DIP Collateral;<br>6. require the Debtors and other Loan Parties to deposit all cash receipts into controlled accounts;<br>7. exercise all rights and remedies under the DIP Documents, the Uniform Commercial Code, the DIP Orders, and applicable law, including foreclosure upon and disposition of DIP Collateral; and<br>8. take any other action authorized by the DIP Orders.<br>The DIP Lender shall give the Debtors, the U.S. Trustee, counsel to any statutory committee and counsel to the Prepetition Secured Parties at least five (5) Business Days' prior written notice before terminating commitments, accelerating the DIP Obligations or exercising collateral-enforcement or cash-collateral remedies (the "<u>Remedies Notice Period</u>"), unless the Bankruptcy Court approves a shorter period. The automatic stay shall be modified only as expressly provided in the applicable DIP Order. Following expiration of that |

| TERM | DESCRIPTION |
|---|---|
| | period, enforcement remains subject to the notice-and-hearing requirements in the DIP Orders and any further court order; if a timely request for a hearing is made, the disputed remedies shall not be exercised before that hearing or further order of the Bankruptcy Court.<br><br>During the Remedies Notice Period:<br><br>• the Debtors may use cash collateral in accordance with an Emergency Operating Budget approved by the DIP Lender and the DIP Orders, or as otherwise authorized by the Bankruptcy Court; pending agreement or court determination, necessary preservation expenditures within the Approved Budget may continue to the extent authorized by the DIP Orders;<br><br>• no payments may be made on account of prepetition claims or indebtedness;<br><br>• no funds may be transferred outside the ordinary course;<br><br>• professional fees may be paid as permitted by the Carve-Out and applicable court orders, and an Emergency Operating Budget shall not reduce or condition the Carve-Out; and<br><br>• any party in interest may request a hearing concerning the asserted Event of Default, the proposed remedies, the Carve-Out, emergency cash use or other appropriate relief; no limitation to the existence of an Event of Default or waiver of the Bankruptcy Court's authority is imposed.<br><br>"Emergency Operating Budget" means a limited budget approved by the DIP Lender following an Event of Default covering only those expenditures necessary to preserve the value of the business and DIP Collateral, including payroll, taxes, insurance, utilities, critical vendor payments, and such other expenditures as the DIP Lender may approve in writing.<br><br>Suspension of further advances during a continuing Event of Default is distinct from termination of the commitment. No investor funding failure, additional fundraising requirement or renewed approval process excuses a borrowing otherwise required under the DIP Documents. All remedies remain subject to the Carve-Out, DIP Collateral Exclusions and the applicable DIP Orders. |
| **Credit Bidding** | Subject solely to section 363(k) of the Bankruptcy Code and absent a determination by the Bankruptcy Court that cause exists to limit such right, the DIP Lender shall be entitled to credit bid all or any portion of its allowed secured DIP Obligations in connection with any sale of DIP Collateral under section 363, pursuant to a chapter 11 plan, or otherwise. To the extent allowed, secured, and credit-biddable under applicable law and the DIP Orders, the amount available to be credit bid shall include principal, accrued and capitalized interest, all fees, expense reimbursements, indemnification obligations, protective |



WEIL\101678179\1\99980.0531

| TERM | DESCRIPTION |
|---|---|
| | advances and all other DIP Obligations. No cash deposit shall be required with respect to the valid credit-bid portion of a bid, subject to the approved bidding procedures. Amounts validly credit bid shall reduce the corresponding DIP Obligations and shall not be recovered again.<br><br>Without limiting the foregoing, in connection with any such sale the DIP Lender may (i) credit bid the DIP Obligations on account of amounts actually advanced to the Borrowers (including amounts released from the DIP Escrow Account) and (ii) in addition to any credit bid, bid in cash up to the amount of unreleased funds then held in the DIP Escrow Account, and such escrowed funds shall be deemed to satisfy any deposit requirement for such cash portion of its bid. If the DIP Lender is the successful bidder, the cash portion of its bid under clause (ii) shall be paid from the DIP Escrow Account at closing and shall reduce the remaining Escrowed Commitments and the Aggregate DIP Commitment dollar for dollar. |
| **Expenses** | The Debtors will pay or reimburse the DIP Lender for all reasonable and documented out-of-pocket costs and expenses of negotiating, documenting, administering, protecting, and enforcing the DIP Facility, including reasonable fees and expenses of legal counsel and one financial advisor, whether incurred before or after the Petition Date. Fees and expenses incurred through initial funding shall be included in the initial funds flow; subsequent invoices shall be paid or capitalized only to the extent due. Amounts not paid in cash when due may be capitalized as DIP Obligations. |
| **Indemnification** | The Loan Parties will jointly and severally indemnify and hold harmless the DIP Lender, its manager, investors, affiliates, and their respective partners, members, directors, officers, employees, advisors, agents, attorneys, successors, and assigns from and against claims, damages, losses, liabilities, and reasonable and documented out-of-pocket expenses arising out of or relating to the DIP Facility, the use of proceeds, the Chapter 11 Cases, or the transactions contemplated hereby, except to the extent finally determined by a court of competent jurisdiction to have resulted from such indemnified person's gross negligence, bad faith, willful misconduct, or material breach of the DIP Documents. No indemnity shall cover disputes solely among indemnified persons not resulting from a Loan Party's conduct, the DIP Lender's failure to obtain investor funding or its failure to fund a required borrowing. Expenses subject to the cap under "Expenses" may not be recovered outside that cap by relabeling them indemnification. No indemnified person will be liable for special, indirect, consequential, or punitive damages, except to the extent payable to a third party. |
| **Assignments; Participations** | The Borrowers may not assign any right or obligation under the DIP Documents without the DIP Lender's prior written consent. The DIP |

| TERM | DESCRIPTION |
|---|---|
| | Lender may assign all or any portion of its commitments, DIP Loans, DIP Obligations, or credit-bid rights or grant participations to an affiliate (or, if applicable, a managed fund) without consent; any other assignment requires the Debtors' consent, which may not be unreasonably withheld, in each case subject to customary confidentiality, sanctions, competitor, and disqualified-institution restrictions to be set forth in the DIP Documents. The DIP Lender may pledge its interests to secure obligations of the DIP Lender without relieving it of any funding obligation. No assignment shall add funding conditions or release the assigning DIP Lender from its undrawn commitment without the Debtors' written consent. Participations shall not confer direct enforcement rights against a Loan Party or alter the funding obligation. |
| **Amendments; Waivers** | No amendment, modification, or waiver will be effective unless in writing signed by the applicable Loan Parties and the DIP Lender and, to the extent required, approved by the Bankruptcy Court. The DIP Lender may extend milestones and waive conditions or defaults in writing without further Bankruptcy Court approval to the maximum extent permitted by the DIP Orders. |
| **Waivers; Releases** | The DIP Orders may contain the waivers and protections expressly agreed herein, including modification of the automatic stay, waiver of marshaling and preservation of credit-bid rights, subject to the Carve-Out, DIP Collateral Exclusions and Remedies Notice Period. Any release of the DIP Lender and its respective directors, officers, investors, participants, employees, subsidiaries, affiliates, attorneys, agents, representatives, successors and assigns (collectively, the "Released Parties") shall be effective and shall be limited to estate claims arising from acts or omissions in connection with negotiation and implementation of the DIP Facility occurring on or before entry of the Final DIP Order. No release shall cover unrelated prepetition conduct, future performance, enforcement of the DIP Documents, or gross negligence, bad faith, willful misconduct or material breach. No release is granted on behalf of a non-Loan Party. Any section 506(c) waiver, waiver of the "equities of the case" exception under section 552(b), or similar provision shall become effective only upon entry of the Final DIP Order. |
| **Governing Law; Forum** | The DIP Documents shall be governed by New York law except to the extent governed by the Bankruptcy Code or other applicable federal law. The Bankruptcy Court shall have exclusive jurisdiction over all matters arising in or related to the Chapter 11 Cases. If the Bankruptcy Court lacks or declines jurisdiction, the parties irrevocably submit to the exclusive jurisdiction of the state and federal courts located in New York. Each party waives trial by jury to the fullest extent permitted by law. |

| TERM | DESCRIPTION |
|---|---|
| **DIP Lender Counsel** | Reimbursement of DIP Lender counsel and advisors will be governed by “Expenses,” the DIP Documents, and the DIP Orders. |

**Acknowledgment / Acceptance**

The signatures below evidence acceptance of this Term Sheet, including the provisions binding upon acceptance and the Aggregate DIP Commitment becoming binding upon entry of the Interim Order as provided herein. Funding remains subject to the applicable conditions expressly set forth in the DIP Documents and DIP Orders.

**[INKIND CARDS, INC.]**

By: ________________________________

Name: ______________________________

Title: _______________________________

Date: _______________________________

**FRC BALANCE LLC, d/b/a TRUE FOOD KITCHEN, and TRUE FOOD KITCHEN PARENT LLC**

By: ________________________________

Name: ______________________________

Title: _______________________________

Date: _______________________________