**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:**<br><br>**FRC BALANCE, LLC, *et al.*,**[1]<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 26-90806 (CML)**<br><br>**(Jointly Administered)**<br><br>**DEBTORS' OBJECTION TO INKIND'S EMERGENCY MOTION TO CONTINUE THE FINAL HEARING ON THE DIP MOTION AND CASH COLLATERAL MOTION**<br><br>**[Relates to Docket No. 268]** |

FRC Balance, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") submit this objection (this "**Objection**") to inKind's Emergency Motion to Continue Final Hearing on the Debtors Emergency Motion for Entry of the Interim and Final Orders [Dkt. 268] (the "**Motion**") filed by inKind Cards, Inc., inKind Credit Fund LP, and inKind Warehouse Facility, LLC (collectively, "**inKind**"). In support of this Objection, the Debtors rely on the Declaration of Nathan Cook, the Debtors' Chief Restructuring Officer (the "**Cook Decl.**"), attached as **Exhibit A**, and the Declaration of Omar J. Alaniz (the "**Alaniz Decl.**"), attached as **Exhibit B**.

## PRELIMINARY STATEMENT

Just two days before the scheduled commencement of the Final Hearing, inKind asks the Court to delay consideration of the Debtors' post-petition financing by at least two weeks. The

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are FRC Balance, LLC (6386); True Food Kitchen Investco, LLC (8744); True Food Kitchen Holdings, LLC (8972); True Food Kitchen Parent, LLC (9901); FRC True Food Preston, LLC (2759); True Food Hospitality, LLC (4500); True Food Beverages, LLC (9500); TFK Maryland LLC (9157); and FRC TF California, LLC (8589). The location of the Debtors' service address for purposes of these chapter 11 cases is 7135 E. Camelback Rd, Suite 230, Scottsdale, AZ 85251. A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/FRCBalance.

Court should deny the Motion. inKind has been actively involved in these cases since October 16, 2026. InKind has taken discovery, filed its Objection and supporting declaration, and submitted its witness and exhibit lists. For reasons unknown to the Debtors, inKind elected not to proceed with the depositions it noticed. Yet, despite bearing the burden to demonstrate good cause, the Motion identifies no outstanding discovery request, no deposition inKind was prevented from taking, and no remaining task that its counsel cannot complete before the November 18th Final Hearing.

None of the Motion's three asserted grounds establishes good cause for a continuance. First, inKind's new counsel appeared just five days before the hearing, after the record had already been substantially developed. inKind may not use a change in counsel to escape the consequences of the litigation strategy its prior counsel pursued. Second, Bankruptcy Rule 9014(c)(2) expressly exempts contested matters from the expert-disclosure requirement of Civil Rule 26(a)(2), absent an order directing otherwise. More fundamentally, inKind retains the opportunity to cross-examine every witness the Debtors call. Third, the settlement discussions between inKind and HumanCo, which the Motion simultaneously characterizes as both terminated and continuing, can proceed regardless of whether the hearing goes forward.

The consequences of delay, by contrast, are concrete, and the estates would bear them. The remaining $13,000,000 of Tranche B is available only upon entry of the Final Order. The Debtors' Chief Restructuring Officer indicates that the Debtors need the next draw by November 20 to fund approximately $2.4 million in payroll due November 23, and the subsequent draw by November 27 to pay December rent and insurance premiums due December 1st. inKind's proposed December 2 hearing date comes too late to fund either obligation. Nor does the third interim order inKind proposes solve the issue: by providing for financing "on the same terms" as the second interim

order, it would leave the remaining Tranche B unavailable to the Debtors. Accordingly, the Court should deny the Motion and hold the Final Hearing on November 18, 2026, as scheduled.

## RESPONSE TO THE MOTION'S FACTUAL ASSERTIONS

### A. The Final Hearing Has Already Been Reset Three Times.

1. The hearing on the Debtors' DIP motion [Dkt. 8] (the "**DIP Motion**") and cash collateral motion [Dkt. 9] (the "**Cash Collateral Motion**") has already been delayed three times on three separate occasions. The Court first continued the hearing to November 2, 2026 [Dkt. 157], and subsequently the Debtors filed notices adjourning it to November 4, 2026 [Dkt. 185], and then again to November 18, 2026, at 3:00 p.m [Dkt. 234] (the "**Final Hearing**").

2. On November 6, 2026, the Court entered its second interim order on the DIP Motion [Dkt. 227] (the "**Second Interim DIP Order**"), which authorizes the Debtors to borrow only the $5,000,000 Tranche A Initial Draw and the $2,000,000 First Tranche B Advance. The remaining $13,000,000 of Tranche B is not available unless and until the Court enters the Final Order. Cook Decl. ¶ 5.

### B. inKind Has Participated Fully and Its Record Is on File.

3. On October 16, 2026, inKind's counsel informed Debtors' counsel of its retention. Alaniz Decl. ¶ 5. Just four days later, on October 20, 2026, inKind began taking discovery, serving informal and then formal discovery requests on the Debtors, the DIP Lender, and other parties. *Id.* inKind also noticed depositions but ultimately elected not to take them. *Id.*

4. On October 23, 2026, inKind filed its omnibus objection to the DIP Motion, the Cash Collateral Motion, and the Debtors' bidding procedures motion [Dkt. 143] (the "**inKind Objection**"), together with the supporting Declaration of Robert S. Berezin [Dkt. 144]. inKind also filed a witness and exhibit list [Dkt. 177], identifying its chief operating officer as a witness

and listing the exhibits it intends to offer at the Final Hearing. Alaniz Decl. ¶ 6.

5. On the current schedule, by the time of the Final Hearing, more than a month will have elapsed since inKind's counsel was retained and more than three weeks since inKind filed its Objection. Alaniz Decl. ¶ 7.

6. Nonetheless, the Motion seeks to continue the Final Hearing until December 2, 2026, "or such other date that gives inKind the reasonable opportunity to conduct necessary discovery and prepare for the Final DIP Hearing." Mot. at 2, ¶ 1. But the Motion identifies no outstanding discovery request, no response inKind is awaiting, and no deposition that inKind was prevented from taking. *See generally* Mot.

**C. inKind's Counsel Change and Debtors' Attempts to Confer.**

7. News of the closure of Weil, Gotshal & Manges LLP, inKind's prior counsel, became public in late October. Alaniz Decl. ¶ 9. On November 9, inKind's prior counsel informed the undersigned counsel that inKind was retaining new counsel. *Id.* Because undersigned counsel had not yet been contacted by replacement counsel, he proactively raised the issue with inKind's former counsel. *Id*. On November 12, Jason Newman of Reed Smith contacted former counsel to advise that the Debtors had retained valuation experts, and on the morning of November 13, he provided the experts' full names and affiliations, nearly a week prior to the hearing. *Id.*

8. Prior inKind counsel responded on November 13, advising that Porter Hedges had been retained.[2] Alaniz Decl. ¶ 9. Undersigned counsel immediately replied, suggesting a call the very same day. *Id.* When the undersigned counsel received no response, he again proactively contacted Porter Hedges on November 14 to request a call. *Id.* Despite the undersigned counsel's efforts, he did not receive a response until November 16, the same day inKind filed the Motion.

[2] Porter Hedges LLP appeared for inKind the same day [Dkt. 255].

*Id.*

9. The Motion states that Weil and Porter Hedges "have since been working diligently to exchange information" and asserts that "additional time is needed to fully evaluate the DIP Motion, the requested relief therein, and the expert witnesses." Mot. at 3, ¶ 4. But it fails to identify any particular document, witness, or issue that new counsel cannot address prior to the November 18th Final Hearing. inKind's Objection, supporting declaration, and witness and exhibit list remain on file. [Dkt. Nos. 143, 144, 177]. Accordingly, the Debtors fail to see why inKind's counsel is unable to proceed on the current timeline.

**D. The Witness Designations.**

10. inKind also argues that the Debtors' witness and exhibit list [Dkt. Nos. 261, 266] designates expert witnesses without accompanying expert reports, characterizing that omission as an "inequitable" attempt to "ambush parties in interest." Mot. at 4, ¶ 6. inKind's characterization is without legal support. No rule or order required the Debtors to serve expert reports in this contested matter, and in any event, inKind will have the opportunity to cross-examine each witness the Debtors call at the Final Hearing.

**E. The Debtors' Liquidity and the Proposed Third Interim Order.**

11. inKind contends that a third interim DIP order "on the same terms as the second interim DIP order" would provide the Debtors "sufficient liquidity to operate through to December 2, 2026," would not prejudice any party, and would "keep the status quo." Mot. at 2, 4, ¶¶ 1, 8. But inKind offers no evidence for any of these assertions, and the Debtors dispute them.

12. Mr. Cook is the Debtors' Chief Restructuring Officer. Cook Decl. ¶ 1. In his judgment, "continuing the Final Hearing is not financially feasible for the Debtors." *Id.* ¶ 4. Because the remaining Tranche B is authorized only upon the entry of the Final Order, and each borrowing must be requested by funding notice at least three Business Days before the proposed

funding date, "each day the Final Order is delayed is a day the Debtors cannot draw the funds the Approved Budget assumes will be available." *Id.* ¶ 5. The Approved Budget, as updated on November 16, 2026 and attached as Exhibit 1 to the Cook Declaration (the "Updated Budget"), projects DIP draws of $2,000,000 in each of the weeks ending November 22 and November 29, 2026, followed by draws of $2,500,000, $3,000,000, and $3,500,000 in the weeks ending December 13, 2026, December 20, 2026, and January 24, 2027, respectively. *Id.* ¶ 6. The two November draws are critical: they fund the Debtors' two largest near-term obligations, payroll and rent. *Id.*

13. *Payroll.* The Debtors operate 34 restaurant locations. Their next payroll, approximately $2.4 million, must be funded on Monday, November 23, 2026. Cook Decl. ¶ 7. To fund that payroll, the Debtors need the next $2,000,000 draw on or before Friday, November 20. *Id.* ¶ 8. With that draw, the Updated Budget projects ending bank cash of approximately $4.6 million for the week ending November 22. Conversely, without it, the Debtors would end the week with only approximately $2.6 million and, given other payment obligations and the clearing of previously issued checks, would be at risk of being unable to fund the $2.4 million payroll the following business day. *Id*. Even a short continuance would put the Debtors' ability to meet their payroll obligations at serious risk. *Id.* ¶ 9. Indeed, if the Final Hearing is continued past this week without additional funding this week, the Debtors could not satisfy the three-Business-Day funding notice requirement and receive the draw before the November 23 payroll. *Id.*

14. *Rent.* December rent under the Debtors' restaurant leases, as well as insurance premiums, is due December 1, 2026. The Debtors need the following $2,000,000 draw, which the Updated Budget reflects on Friday, November 27, to fund approximately $1.85 million of rent disbursements and $263,000 of insurance premiums in the week ending December 6. Without the

two November draws, projected ending bank cash for the week ending December 6 would be approximately negative $1.43 million. Cook Decl. ¶ 10. Many of the Debtors' rent payments are made via physical check, so the Debtors need the funds in their bank account by Friday, November 27, to issue and deliver checks by December 1. *Id.* ¶ 11. Due to the Thanksgiving holiday occurring on Thursday, November 26, Debtors' payment window is further shortened. *Id.* As the Court is well aware, late post-petition rent would expose the Debtors to administrative claims and landlord disputes at the very time they are working to preserve their leases for a going-concern sale. *Id.* The Debtors must also pay a first Stub Rent Claim installment of approximately $390,000 on or before December 4, 2026. *Id.*

## ARGUMENT

15. The decision whether to grant a continuance is committed to the sound discretion of the trial court. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1193 (5th Cir. 1986); *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995) (reviewing denial of continuance for abuse of discretion and affirming unless the ruling was arbitrary or clearly unreasonable); *Arguello v. LaFavers*, 448 F. Supp. 3d 655, 666 (S.D. Tex. 2020) (describing trial court's discretion over continuances in bankruptcy proceeding as extremely wide, to be disturbed only if arbitrary or clearly unreasonable). This Court's procedures provide that "all motions for a continuance should concisely state the reason a continuance is being requested and the amount of additional time that is needed. Until a motion for continuance is granted, all parties should assume that no continuance will occur." Court Procedures (Judge Chris Lopez) ¶ 7.

16. As the movant, inKind bears the burden of showing good cause. In the closely analogous setting of a request to modify a scheduling order, the Fifth Circuit has put the point directly: "Because Squyres requested the continuance, it was his burden to establish good cause." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015). In that setting, the court weighs

four factors: the movant's explanation, the importance of the relief, the potential prejudice, and whether a continuance can cure that prejudice. *Id.* (*quoting Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)). In order to prevail, a party must demonstrate prejudice, and prejudice is never presumed. The Fifth Circuit will not disturb the denial of a continuance unless the complaining party demonstrates prejudice. *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549–50 (5th Cir. 2000. inKind has not demonstrated good cause on any of its three grounds, and the Debtors would be harmed by a continuance in ways that inKind wholly fails to address.

## I. INKIND HAS NOT SHOWN GOOD CAUSE TO CONTINUE THE FINAL HEARING.

### A. inKind Has Had More Than a Month to Prepare, and Its Evidentiary Record Is Already on File.

17. A party cannot manufacture good cause for a continuance by failing to use the time it had to prepare. In *Squyres*, the Fifth Circuit affirmed the denial of continuances where the delay in discovery was self-imposed. 782 F.3d at 237–38. In *Fontenot*, the court affirmed the denial of a continuance of a summary-judgment hearing because counsel identified no useful discovery and showed no resulting prejudice. 780 F.2d at 1193–94. In *HC Gun*, the court affirmed the denial because the City had not shown how the additional records it sought were relevant and could already cross-examine the witness on the subjects that mattered: "In short, the requisite prejudice is lacking." 201 F.3d at 550–51. *See also Avenell*, 66 F.3d at 721–22 (affirming denial of continuance where movants had notice of every deadline, made no attempt at discovery for nine months, and never tried to depose a single witness, such that their own lack of diligence was the only barrier to discovery); *Arguello*, 448 F. Supp. 3d at 667 (affirming bankruptcy court's denial of cursory emergency continuance motion where debtor had ample notice of the discovery cutoff and trial).

18. inKind is in the same position as each of those movants. Its counsel has been engaged since October 16. Alaniz Decl. ¶ 5. It began discovery on October 20 and served requests on the Debtors, the DIP Lender, and others. *Id.* It noticed depositions and then chose not to take them. *Id.* It filed the inKind Objection and the Berezin declaration on October 23 [Dkt. Nos. 143, 144]. *Id.* ¶ 6. It also filed a witness and exhibit list for the November 2 hearing [Dkt. 177], which shows that inKind was ready to try the DIP Motion more than two weeks ago. Since then, the hearing has been adjourned twice more [Dkt. Nos. 185, 234]. Each adjournment gave inKind more time. The Motion does not identify any discovery inKind sought and was denied, any response it is waiting for, or any witness it was unable to examine. *See Ronnie Desormeaux LLC v. Sikes*, 631 B.R. 234, 244–45 (W.D. La. 2021) (affirming bankruptcy court's denial of continuance sought three days before evidentiary hearing to obtain discovery); *Matter of Triple E Transp., Inc.*, 169 B.R. 368, 371–72 (E.D. La. 1994) (affirming denial of last-minute continuance request where the information the debtor awaited was essentially what it already had). Moreover, inKind's request for December 2 "or such other date" fails to state, "the amount of additional time that is needed," as this Court's procedures require. Mot. at 2, ¶ 1; Court Procedures (Judge Chris Lopez) ¶ 7.

**B. The Change in inKind's Counsel Does Not Justify Delaying the Final Hearing.**

19. In *Prudential Mortgage Capital Co. v. Faidi*, the movant's original counsel withdrew, and replacement counsel appeared and sought a continuance. Trial began just six days later. 444 F. App'x 732, 734 (5th Cir. 2011) (unpublished). The court affirmed the trial court's denial because pretrial preparation was largely complete at the time new counsel was retained and the movant had not identified what more was needed: "But Faidi has failed to show what other pretrial materials were necessary." *Id.* at 736. Similarly, in *Kelso v. Butler*, counsel withdrew for health reasons, and the movant, who had months to obtain new counsel, sought a continuance. The court held: "The district court, which had already granted Kelso's two previous motions for a

continuance, did not abuse its discretion by failing to grant a third." 899 F.3d 420, 427–28 (5th Cir. 2018).

20. The record establishes that inKind can proceed with the Final Hearing on November 18. The record is already substantially complete, and inKind's prior counsel thoroughly developed it through its Objection, supporting declaration, and witness and exhibit list. [Dkt. Nos. 143, 144, 177]. As in *Faidi*, the preparation for the Final Hearing was largely complete before the change in counsel. The issues are those already framed in the inKind Objection, and the Motion identifies no evidence, argument, or other material that new counsel lacks and needs to proceed. As in *Kelso*, inKind had both notice and ample opportunity to prepare: Weil's closure became public nearly three weeks ago, and the Debtors repeatedly reached out to both inKind's prior and new counsel in advance of the hearing. Alaniz Decl. ¶ 9.

**C. The Debtors' Witness Designations Do Not Justify a Continuance.**

21. The Motion's objection to the absence of expert reports rests on a disclosure requirement that does not apply in this contested matter. Under Bankruptcy Rule 9014(c)(2), "unless the court orders otherwise, the following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, do not apply in a contested matter," including "(a)(2), disclosures about expert testimony." Fed. R. Bankr. P. 9014(c)(2). A court in this Circuit has already applied this rule as written, explaining that "Bankruptcy Rule 9014(c) expressly states that Rule 26(a)(2) shall not apply to contested matters 'unless the Court directs otherwise.'" *In re Couture Hotel Corp.*, 536 B.R. 712, 723 (Bankr. N.D. Tex. 2015). In *Couture*, the court declined to exclude an expert's undisclosed opinions because it had not directed that Rule 26(a)(2) apply. *Id.*

22. No order entered in these cases directs that Rule 26(a)(2) apply to the DIP Motion. inKind therefore cannot base a request for a continuance on the absence of reports that no rule requires. To the same point, inKind was also well aware that the Final Hearing would be

evidentiary. As the Court's Procedures make clear, all hearings are evidentiary unless the Court directs otherwise. Court Procedures (Judge Chris Lopez) ¶ 6. inKind initially began preparing for an evidentiary hearing on November 2 [Dkt. 177]. Following three adjournments spanning nearly three weeks, inKind has had ample opportunity to take the depositions it deemed necessary but ultimately chose not to proceed. Alaniz Decl. ¶ 5; *see also* Dkt. Nos. 157, 185, 234.

### D. The Settlement Discussions Between inKind and HumanCo Do Not Justify a Continuance

23. inKind's third ground is that "inKind and HumanCo were in active settlement discussions that are continuing." Mot. at 2. Yet, just two paragraphs later, the Motion says that "HumanCo terminated settlement discussions earlier today" and that inKind's new counsel "has attempted to revive those negotiations." Mot. ¶ 5. As is obvious, the talks cannot be both simultaneously continuing and terminated. In any event, they do not supply good cause.

24. The Motion's own account of the settlement discussions undermines its request for a continuance. inKind acknowledges that settlement discussions occurred "during the period between the Second Interim DIP Order and today," a period beginning November 6, nearly two weeks before the scheduled Final Hearing. In other words, inKind appears to have devoted the ten days leading up to the hearing exclusively to settlement negotiations rather than preparation and now seeks a continuance because negotiations did not produce an ultimate agreement. That is precisely the kind of self-imposed delay the Fifth Circuit has held does not support a continuance. *Squyres*, 782 F.3d at 237–38; *see also Avenell*, 66 F.3d at 721 (affirming denial where the movants' own lack of diligence was the only barrier to the discovery they sought).

25. inKind also asserts that a successful settlement "would have obviated the need to continue the Final DIP Hearing." Mot. ¶ 5. The settlement inKind describes concerns inKind's dispute with HumanCo. However, the Final Hearing concerns whether the Debtors may access the

remaining $13,000,000 of Tranche B, which they need to meet payroll and rent. Put simply, the estates' need for that financing does not depend on how a negotiation between two non-debtor parties turns out.

**E. The Debtors Need the Final Order to Fund the November 23 Payroll and the December 1 Rent, and inKind's Proposed Date Falls After Both.**

26. The Debtors' need for the Final Order is specific and dated. The remaining $13,000,000 of Tranche B is authorized only upon the entry of the Final Order. Cook Decl. ¶ 5. The Updated Budget assumes $2,000,000 draws in the weeks ending November 22 and November 29 to fund the Debtors' payroll and rent. *Id.* ¶ 6. The Debtors need the first draw by November 20 to fund approximately $2.4 million in payroll due November 23 across 34 restaurants. Without that draw, the Debtors would end the week with only approximately $2.6 million and would be at risk of being unable to fund payroll. *Id.* ¶¶ 7–8. If the Final Hearing is continued past this week, the Debtors cannot satisfy the three-Business-Day funding notice requirement and receive the draw before payroll. *Id.* ¶ 9. Similarly, the second draw, projected for November 27, funds December rent and insurance premiums due December 1. Without the two November draws, the Debtors' projected ending bank cash for the week ending December 6 turns negative by approximately $1.43 million. *Id.* ¶ 10.

27. inKind's proposed date of December 2 falls nine days after the payroll date and one day after the Debtors' December rent and insurance premiums are due. Cook Decl. ¶¶ 7, 10. inKind cites the Thanksgiving holiday as a reason to pick December 2. Mot. At 4, ¶ 8. In reality, the Thanksgiving holiday actually cuts the other way: it shortens the time the Debtors have to request and receive funding, and to issue rent checks, before rent comes due. Cook Decl. ¶ 11. The cost of missing these dates would fall on the Debtors' employees and landlords, and on the going-concern value that the sale process is meant to preserve. *Id.* ¶¶ 7, 11, 12; *see In re Niemiec*, 662 B.R. 239,

249–50 (Bankr. D.S.C. 2024) (denying further continuance where creditors opposed further delay and had continued to expend time and money).

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court deny the Motion, proceed with the Final Hearing on November 18, 2026, at 3:00 p.m., as scheduled, and grant such other relief as is just.

Dated: November 17, 2026

Houston, Texas

Respectfully submitted,

*/s/ Omar J. Alaniz*
**REED SMITH LLP**
Omar J. Alaniz (24040402)
London England (24110313)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: 469.680.4200
Fax: 469.680.4299
E-mail: oalaniz@reedsmith.com
lengland@reedsmith.com

**REED SMITH LLP**
Amalia Sax-Bolder (*pro hac vice*)
1900 Lawrence Street, Suite 2800
Denver, CO 80202
Telephone: 303.552.3800
Fax: 303.552.3799
E-mail: asaxbolder@reedsmith.com

*Proposed Counsel for Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on November 17, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

*/s/ Omar J. Alaniz*
Omar J. Alaniz